UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANNA LYNN CAIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. 2:16-cv-02145 CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.[1]

<u>BACKGROUND</u>

Plaintiff, born April 16, 1957, applied on January 28, 2013 for SSI, alleging disability beginning August 15, 2011. Administrative Transcript ("AT") 10, 24. Later the parties stipulated to an amended disability onset date of January 3, 2013. AT 10. Plaintiff alleged she was unable

---

[1] The parties have consented to magistrate judge jurisdiction. ECF Nos. 3 and 8.

1

to work due to PTSD, depression, and anxiety. AT 65. In a decision dated May 27, 2015, the ALJ determined that plaintiff was not disabled.[2] AT 7-26. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since January 3, 2013, the amended alleged onset date of disability.
>
> 3. The claimant has the following severe impairments: depressive disorder; post traumatic stress disorder (PTSD); and obesity.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

| | |
|---|---|
| 1 | impairments in 20 CFR Part 404, Subpart P, Appendix 1. |
| 2 | 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels. However, relative to the claimant's mental residual functional capacity, the undersigned finds that she has the following nonexertional functional limitations: the claimant is limited to the performance of unskilled simple repetitive tasks performed in a low stress job environment; with the claimant being capable of only occasional decisionmaking, only occasional changes in the routine work setting, and only occasional duties requiring the exercise of judgment; with the claimant being precluded from performing any fast-paced production type work; with the claimant being precluded from any contact or interaction with the general public; and with the claimant capable of only occasional interaction with coworkers, with such interaction not requiring the performance of any tandem tasks. |
| | 6. The claimant is unable to perform any past relevant work. |
| | 7. The claimant was born on April 16, 1957, and was 55 years old, which is defined as an individual of advanced age, on the amended alleged disability onset date of January 3, 2013. |
| | 8. The claimant has at least a high-school education and is able to communicate in English. |
| | 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. |
| | 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. |
| | 11. The claimant has not been under a disability, as defined in the Social Security Act, beginning on January 3, 2013, the amended alleged date of onset, and continuing thereafter, through the date of this decision. |

AT 12-26.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly assessed the medical evidence; (2) the ALJ improperly discounted plaintiff's credibility and a third-party statement; (3) the RFC was not supported by substantial evidence; and (4) the ALJ erred by not incorporating all of plaintiff's mental

3

limitations in the hypothetical posed to the vocational expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A. Medical Evidence

Plaintiff asserts that the ALJ erred in discounting certain findings by psychiatric consultative examiner Dr. Whitten, who evaluated plaintiff in July 2013, and in rejecting the findings of Dr. Lancaster, who completed a checkbox medical assessment of plaintiff in April 2015.

4

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester , 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

1. Dr. Whitten

The ALJ accorded "significant probative weight" to Dr. Whitten's psychiatric consultative examination of plaintiff on July 25, 2013. AT 20; see AT 368-372. The ALJ discussed Dr. Whitten's findings at length, noting plaintiff's normal cognitive functioning, attitude, and behavior during the examination. AT 20; see AT 370-371. "Despite the essentially normal mental status evaluation, diagnosis was bipolar disorder, post traumatic stress disorder, panic disorder with agoraphobia, and personality disorder with paranoid traits," the ALJ wrote of Dr. Whitten's findings. AT 20.

> Dr. Whitten stated that the claimant was capable of performing simple and repetitive tasks; that the claimant was able to accept instructions from supervisors; that she would not be tolerant of customers or the public; and that she might be distracted by her coworkers. Dr. Whitten further opined that the claimant would be capable of performing work activities on a consistent basis and maintaining regular attendance, but that she might not be able to complete a normal workweek without interruptions from her symptoms or deal with the usual stressors encountered in a competitive work environment. Dr. Whitten concluded that the claimant's mental health issues would have an impact on her ability to work reliably and consistently.

AT 21; see AT 372.

While largely crediting these findings, the ALJ noted that Dr. Whitten only saw plaintiff one time and "did not have access to the vast majority of the claimant's mental health record," but only two pages of progress notes from the county behavioral health department. AT 21; see AT 368. "These factors reduce the evidentiary weight that can be assigned to this report." AT 21.

The ALJ further noted that Dr. Whitten's evaluation apparently "was conducted during a period of time during which the claimant was not actively engaged in treatment" and not on psychotropic medications. AT 21; see AT 353 (April 2013 discharge note stating that plaintiff had "not picked up her medication this month" and had not followed up with treatment, but nonetheless was well enough for discharge to home and self-care). Earlier in his decision, the ALJ determined that "during periods of time during which the claimant is actively engaged in mental health treatment, including consistently taking her psychotropic medications, her symptomatology improves to the extent that she is capable of performing at least unskilled low stress work activity with limited contact with others."[3] AT 19. As to Dr. Whitten's opinion, the ALJ found that "it is likely he would have found her to have a higher level of mental functional ability if she had been actively engaged in treatment and continuing to take her medications at that time." AT 21. The ALJ concluded that the rest of Dr. Whitten's findings were "essentially

---

[3] See AT 20 (ALJ credits agency physicians' assessment that "medications quickly resulted in initial improvement in the claimant's overall mental status," such that with "ongoing consistent treatment" she would not be precluded from work); AT 74 (August 2013 medical note by state agency physician that plaintiff "started treatment 1/13 and taking meds" which "quickly helped her become calmer and tolerate negative thoughts"); AT 357 (March 2013 medical note that plaintiff's anxiety was "under control" with medication).

consistent with the remainder of the record" and assigned them significant weight. AT 21.

Plaintiff argues that "the ALJ disregarded without explanation Dr. Whitten's observation that her behavior was nervous, apprehensive, and tense" and that "[s]he would not be able to deal with the usual stressors encountered in a competitive work environment." (ECF No. 13-1 at 16.) Plaintiff further contends that the ALJ failed to resolve a conflict between the opinions of a state agency physician and Dr. Whitten and disregarded medical records of plaintiff's ongoing treatment for anxiety and depression in 2013 and 2014. (ECF No. 13-1 at 18.)

The court concludes that the ALJ provided specific and legitimate reasons for according less weight to the portion of Dr. Whitten's opinion finding that plaintiff might not be able to complete a normal workweek without interruptions from her symptoms or deal with the normal stressors of work. The ALJ summarized Dr. Whitten's findings as to plaintiff's appearance and behavior and found his evaluation to be largely consistent with the overall record, including the opinions of agency physicians. The court concludes that the ALJ did not err in weighing Dr. Whitten's opinion.

2. Dr. Lancaster

Plaintiff asserts that the ALJ "erred by failing to give greater weight to the opinion of Dr. Thomas Lancaster, one of plaintiff's treating psychiatrists at Butte County Department of Behavioral Health, than to the State agency non-examining physicians[.]" (ECF No. 13-1 at 17.) Plaintiff argues that Dr. Lancaster's opinion should have been accorded greater weight because he had a two-year history of treating her and his assessment of her functional limitations was consistent with the determination by Dr. Whitten and other portions of the record. (Id.)

Dr. Lancaster saw plaintiff in January 2013, noting that plaintiff wanted a different sleeping aid than Trazadone and that her panic attacks and crying spells had decreased but she still had memory loss and PTSD symptoms. AT 356. He prescribed Seroquel to replace the Trazadone and additional medications for anxiety and depression. AT 356.

More than two years later, on April 28, 2015, Dr. Lancaster completed a two-page Medical Assessment of Ability to do Work-Related Activities for plaintiff. AT 454-455. He checked "poor or none" for plaintiff's abilities to relate to co-workers, deal with the public,

7

interact with supervisors, deal with work stresses; understand, remember and carry out complex or detailed job instructions; relate predictably in social settings, and demonstrate reliability. AT 454-455. In support of this assessment, Dr. Lancaster listed findings of major depression, panic disorder with agoraphobia, and PTSD. AT 455.

The ALJ gave Dr. Lancaster's 2015 findings "minimal evidentiary weight," characterizing them as "entirely conclusory, with the record not containing any underlying treatment documentation from Dr. Lancaster, including the lack of any ongoing clinic or progress notes, or findings from mental status examinations or evaluations, which would serve to validate his conclusory findings." AT 15. Plaintiff correctly states that the ALJ did not consider Dr. Lancaster's January 2013 evaluation of plaintiff. However, as defendant points out, "this single note from over two years prior is not contemporaneous, and does not contemplate any of the functional limitations assessed on the form." (ECF No. 15 at 19; emphasis in original.)

The ALJ further found that Dr. Lancaster's findings about plaintiff's functional limitations were "not supported by the remainder of the mental health treating and evaluating medical source records, including the findings of the [State agency physicians], as well as the findings of long-term primary mental health treating source Dr. Riffel."[4] AT 15; see also AT 22 (rejecting Dr. Lancaster's 2015 assessment as "inconsistent with the record as a whole").

The ALJ may properly reject an opinion in the form of a checklist when it is not supported by objective evidence, is contradicted by other medical assessments, and is based on plaintiff's subjective statements. Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Molina v. Astrue, 674 F.3d 1104, 1111-12 (9th Cir. 2012) ("We have held that the ALJ may permissibly reject check-off reports that do not contain any explanation of their basis of their conclusions") (quotation omitted). Here, Dr. Lancaster's conclusory checklist assessment was contradicted by other medical assessments, as noted above. The court finds no error in the ALJ's

---

[4] See AT 19 (citing Dr. Sergio Riffel's December 2014 mental status evaluation finding plaintiff to have no neurological or psychological symptoms, AT 435-439); AT 20 (according significant weight to agency Drs. Berkowitz and Schumacher's conclusions that "with ongoing consistent treatment the claimant would not be precluded from performing all types of competitive work related activity," AT 73-74, 85-86, 100, 113).

8

weighing of Dr. Lancaster's 2015 opinion.

B. Credibility

Plaintiff next claims that the ALJ erred in discounting her subjective complaints and her daughter's third-party statement. The ALJ found that the limiting effects of plaintiff's symptoms were not credible to the extent they were inconsistent with the RFC "because they are not supported by the overall medical record or by the claimant's testimony or statements of record." AT 23. The ALJ found that plaintiff was "prone to making inconsistent statements, tends to exaggerate her level of symptomatology, and is not fully credible." AT 22. He concluded that plaintiff's "inconsistent statements of record and her failure to consistently engage in prescribed mental health treatment and therapy, including taking her psychotropic medications on an ongoing basis, significantly erode her overall level of credibility." AT 22.

In support, the ALJ cited plaintiff's varying statements about the origin of her disability (AT 22): In her testimony, she stated that she left work in 2011 because she witnessed two men try to kill her son with an axe and knife. (AT 46.) This conflicts with her alleged disability onset date in January 2013. Moreover, "when the claimant was evaluated by psychiatrist Dr. Whitten on July 25, 2013, her narrative regarding this incident was completely different." AT 22, citing AT 368 (plaintiff described "one man" trying to kill her son and stated that "she sees him everywhere she goes" including in the store where she worked). Dr. Whitten noted that the attempted murder of plaintiff's son took place in 2010, yet plaintiff continued working until August 2011.[5] AT 214, 368.

The ALJ also cited plaintiff's sporadic record of treatment and medication, for which there is ample record evidence. See, e.g., AT 246, 353, 356, 413. At the hearing, plaintiff acknowledged that she missed appointments, didn't pick up medications, and didn't attend therapy for months in 2013 and 2014, offering various reasons and "scheduling problems." AT

---

[5] Plaintiff's daughter stated that she had "watched my mom struggle her entire life from depression, anxiety, panic attacks, self persecution, and so forth." AT 251. Yet plaintiff had a lengthy work history prior to 2011. AT 37-38. See Gregory v. Bowen, 844 F.2d 664, 666-67 (9th Cir. 1988) (finding non-disability as to longstanding back problems where allegedly disabling impairment "had not prevented [plaintiff] from working").

9

39-45.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

////

Here, the ALJ provided specific reasons for discounting plaintiff's credibility, supported by substantial evidence, including the medical evidence discussed above and evidence of plaintiff's sporadic failure to seek treatment or follow a course of treatment. The undersigned concludes that the ALJ supplied legally sufficient reasons to make an adverse credibility finding.

Turning to the third-party statement of plaintiff's daughter, Leah Morrow (AT 244-252) the ALJ summarized and "[took] into consideration" this statement but did not address its credibility. AT 17. "Ms. Morrow reports that the claimant has shown signs of panic attacks, fearfulness, anxiety, uncontrollable crying, and paranoia"; had become "progressively more isolated and withdrawn"; and had problems with memory, concentration, and getting along with others, among other difficulties, the ALJ stated. AT 17.

Plaintiff argues that the ALJ erred by failing to make any credibility finding as to Ms. Morrow's statement, and that the error was not harmless because Ms. Morrow's statements were consistent with other medical evidence and relevant to the RFC finding. "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

First, to the extent that Ms. Morrow's statement was largely consistent with other record evidence, it was incorporated into the RFC's nonexertional functional limitations and not discounted. Second, the ALJ was not required to explicitly discount Ms. Morrow's statements to the extent they echoed plaintiff's subjective complaints, which were found not fully credible for the reasons set forth above. See Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ provided sufficient reasons for rejecting claimant's own testimony, "it follows that the ALJ also gave germane reasons for rejecting" similar testimony of lay witness). The court finds no reversible error with respect to law witness testimony.

////

11

C. Residual Functional Capacity

Plaintiff next argues that the RFC is not supported by substantial evidence for two reasons. First, plaintiff asserts that the RFC does not incorporate evidence of plaintiff's panic attacks and diagnosis of panic disorder, which "impacted her capacity to work reliably and consistently and to complete a normal workweek." (ECF No. 13-1 at 25, citing AT 371, 455.) The latter cite is to Dr. Lancaster's 2015 checkbox form, which the ALJ accorded little weight for the reasons discussed above. Plaintiff testified that she had to take Ativan to leave the house "because I start getting anxious and panicky," which lasted up to an hour and a half. AT 49-50. However, the ALJ found plaintiff less than credible for reasons discussed above. See AT 22 (finding plaintiff less than credible "[r]elative to her alleged ongoing panic attacks").

Dr. Whitten diagnosed plaintiff with "panic disorder with agoraphobia" (AT 371), and a 2013 medical record from Butte County Department of Behavioral Health also lists this diagnosis (AT 344). In Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012), the plaintiff was diagnosed with panic disorder and testified to its symptoms. The Ninth Circuit found that "[b]ecause the ALJ excluded panic disorder from Hill's list of impairments and instead characterized her diagnosis as anxiety alone, the [RFC] determination was incomplete, flawed, and not supported by substantial evidence in the record." Here, the ALJ noted that plaintiff's diagnoses included panic disorder and PTSD, but found that her symptomatology improved with the use of psychotropic medications. AT 18. He considered her testimony that she had "severe panic attacks" but found her less than fully credible for the reasons discussed above. AT 17. See Batson, 359 F.3d at 1197 (ALJ not required to incorporate testimony properly found not credible in RFC). Plaintiff did not list panic attacks or panic disorder as a disabling condition in her application (rather, she listed anxiety), and though she testified to daily panic attacks (AT 48-49), the record contained "no history of repeated episodes of decompensation" or evidence that plaintiff's "anxiety related symptomatology has resulted in complete inability to function independently, outside the area of one's home." AT 14. Finally, the RFC incorporated multiple social limitations, including the requirement of low-stress, routine work and limited interactions with others. Based on the foregoing, the undersigned finds this case distinguishable from Hill in

12

that here the ALJ's RFC determination was supported by substantial evidence.

Plaintiff further argues that the RFC erroneously fails to include a limitation concerning plaintiff's ability to complete a normal workweek without interruption from psychiatric symptoms. For the reasons discussed above, including the overall medical record, plaintiff's credibility issues, and the multiple nonexertional functional limitations incorporated into the RFC, the undersigned finds that the ALJ's RFC determination was supported by substantial evidence.

D. Vocational Expert

Lastly, plaintiff contends that the ALJ erroneously relied on the VE's testimony to conclude that other work was available, because the hypothetical posed to the VE failed to include "all of her mental impairment limitations as determined by Dr. Whitten." (ECF No. 13-1 at 27.) See AT 61-62 (VE questioned as to limitations found by Dr. Whitten). However, as discussed above, the ALJ was not required to credit every finding by Dr. Whitten. See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question not supported by substantial evidence.")

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is granted; and

3. Judgment is entered for the Commissioner.

Dated: January 22, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE